COMMONWEALTH *vs.* JAMES A. RICHARDS.
(and four companion cases[1]).

Suffolk. November 3, 1975. — January 6, 1976.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Constitutional Law,* Due process of law, Idle and disorderly person. *Idle and Disorderly Person. Practice, Criminal,* Transcript of evidence, Recording of proceedings.

The "disorderly persons" provision of G. L. c. 272, § 53, as construed by this court in *Alegata* v. *Commonwealth,* 353 Mass. 287 (1967), and *Commonwealth* v. *A Juvenile,* 368 Mass. 580 (1975) is not unconstitutionally vague. [445-446]
At a criminal trial evidence of the circumstances in which each of three defendants shouted obscenities, fought with police officers, and resisted arrest in the midst of a crowd which was hostile and abusive to the police and in which there was drinking of alcoholic beverages warranted findings that each of the defendants was a disorderly person under G. L. c. 272, § 53. [446-448]

---

[1] Of the companion cases two are against Isaac Richards and two are against Ocie Elder.

At a criminal trial where there was ample evidence, if believed, of the defendants' guilt, inconsistencies in the testimony of the Commonwealth's witnesses did not require that verdicts be directed for the defendants. [448]

At a trial on complaints charging the defendants with being disorderly persons under G. L. c. 272, § 53, where there was evidence that the defendants had engaged in fighting and violent or tumultous behavior, as well as evidence that the defendants had used offensive and abusive language, and there was no showing in the record that the jury were permitted to consider speech or expressive conduct as evidence of guilt, there was no error in the denial of the defendants' motions to dismiss the complaints and motions for directed verdicts. [448-450]

Where the defendants at a criminal trial in the Municipal Court of the City of Boston were permitted to record the proceedings on tape, there was no error in the denial of the defendants' motions for appointment of a stenographer and for supplying a stenographic transcript at public expense. [451]

FIVE COMPLAINTS received and sworn to in the Municipal Court of the City of Boston on March 5, 1974.

Upon appeal to a jury session, the cases were tried before *Foster, J.*

*Robert H. Deaderick, Jr.*, for the defendants.

*Kathleen M. Curry*, Assistant District Attorney, for the Commonwealth.

HENNESSEY, J. The three defendants were found guilty on all complaints, after trial before a judge of the Municipal Court of the City of Boston, as follows. Isaac Richards: disorderly person, G. L. c. 272, § 53; drinking intoxicating liquor in public in violation of a city ordinance; assault and battery on a police officer, G. L. c. 265, § 13D. James A. Richards: disorderly person, G. L. c. 272, § 53; assault and battery on a police officer, two counts, G. L. c. 265, § 13D. Ocie Elder: disorderly person, G. L. c. 272, § 53; assault and battery on a police officer, two counts, G. L. c. 265, § 13D.

The defendants appealed, and the appeals were tried before a judge with jury in the jury of twelve session of the Municipal Court of the City of Boston.

Verdicts of guilty were returned against all three defendants as to the disorderly person complaints, and a fine of $100 thereon was imposed against each. Isaac Richards was also found guilty of drinking intoxicating liquor in a public place, and a fine of $20 was imposed. Ocie Elder was also found guilty of assault and battery on a police officer, and was sentenced to thirty days in a house of correction, but the sentence was suspended and a one-year probation was imposed. Execution of all sentences was stayed pending appeal.

The defendants are before this court on a bill of exceptions. G. L. c. 278, § 31. The defendants argue that it was error for the judge to deny their motions to dismiss and for directed verdicts as to all complaints. As to the disorderly person complaints in particular, they argue that G. L. c. 272, § 53, is unconstitutional because of vagueness and overbreadth. They also argue that it was error to deny their motions that a stenographer be appointed and that they be supplied a free transcript of the proceedings. We conclude that there was no error.

1. We turn first to the claim, as raised by the defendants' motions to dismiss the complaints, that the "disorderly persons" provision of G. L. c. 272, § 53, is unconstitutionally vague. We recently upheld this statutory provision against a claim of unconstitutional vagueness in *Commonwealth* v. *A Juvenile,* 368 Mass. 580, 587 (1975). We reaffirm that holding now. There is no necessity to repeat here our extended reasoning as stated in that case. *Id.* at 595-599. Suffice it to say, we concluded that as reaching to *conduct* (other than expressive conduct) the "disorderly persons" provision is not vague. *Id.* at 587. We recognized that the statutory phrase would be unconstitutionally vague, except for this court's authoritative construction in *Alegata* v. *Commonwealth,* 353 Mass. 287, 304 (1967).

In the *Alegata* case we engrafted onto § 53 the Model Penal Code definition of the offense of disorderly conduct (Model Penal Code § 250.2 [Proposed Official Draft,

1962]), and, with this additional definitional content, held that the statute charges an offense which is not void for vagueness.   Section 250.2 of the Model Penal Code, after a preface which merely defines the requisite intent to commit a criminal act, specifies that a person is guilty of disorderly conduct who "(a) engages in fighting or threatening, or in violent or tumultuous behavior; or . . . (c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." [2]

2. We turn next to the defendants' assertions, as raised by their motions for directed verdicts, that assuming constitutionality of G. L. c. 272, § 53, the evidence did not warrant their convictions as disorderly persons.

We summarize the evidence most favorable to the Commonwealth as introduced in the Commonwealth's case in chief prior to resting its case, at which time the defendants' motions for directed verdicts were denied.

During the afternoon commuter rush hour of March 4, 1974, about 4:50 P.M., Boston police officers Donald Locke and Robert Hurley went to the Copley Square Mall in response to a complaint from the custodian of a nearby commercial building.   Congregated about the crowded mall were groups of people, some of whom were drinking alcoholic beverages.   The officers placed one person who had been drinking under arrest.   Officer Locke then went to two or three of the groups and requested that they stop drinking or be placed under arrest.   Isaac Richards, who persisted in drinking on the mall, was informed by Officer Locke that he had been

---

[2] Subsection (b) of § 250.2, omitted above, provides that a person is disorderly who "(b) makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present."   This court no longer relies on subsection (b) in defining a disorderly person by reason of the unconstitutional overbreadth of this provision in reaching speech and expressive conduct. *Commonwealth* v. *A Juvenile, supra* at 587-595.

warned to stop drinking and leave the area, and that since he had not done so, he was now under arrest.

When the officer attempted to make the arrest, the defendant Isaac Richards kept pulling away from Officer Locke and jerking his arm away. As Richards continued to resist arrest, he called Officer Locke a "mother f-----" and told him he was like the "f------ pigs in Rhode Island." A crowd began to surround Officer Locke.

Halfway to the police cruiser Officer Hurley came to Officer Locke's assistance. When they got Isaac Richards to the sidewalk, James Richards, his brother, began punching Officers Locke and Hurley about the head, shoulders, and back. James Richards yelled at the officers as he struck them, "You mother f------ white pigs, let go of my brother, they're taking my brother, let him go, he didn't do nothing." As James continued to punch the officers and yell obscenities, the crowd which was gathering became hostile and abusive toward the police. About 200 persons had congregated. They bombarded Officers Locke and Hurley with bundles of newspapers, books, and other debris. During this time Isaac Richards kept falling down as the officers attempted to bring him to the police cruiser. On reaching the cruiser Isaac resisted being placed inside by placing his hands on the roof of the cruiser. Within a few minutes after Officers Locke and Hurley had reached the cruiser with Isaac, other police officers arrived on the scene, pursuant to an "officer in trouble" call. Officer Hurley then let go of Isaac and assisted other officers in subduing James Richards. James and Isaac were taken to a waiting police wagon. As the officers attempted to place Isaac in the wagon, he kicked Officer Locke in the arm, causing Locke to fall back against Officer Peter Dougherty who was assisting Locke with Isaac. At the time Isaac and James were being placed in the police wagon, Officer Cardinal was standing near the wagon when his attention was drawn to the defendant Ocie Elder. Elder said to Cardinal: "What are you arresting them for, why don't

you arrest me, you don't have any b----, I'll kill you, I'll break you in two." Cardinal responded, "[I]f you don't behave yourself, you're going to be arrested also." Elder suddenly lurched out of the crowd and struck Cardinal on the mouth with his fist. The officer received soreness in his mouth and also had a partial plate cracked by the blow. Officer Robert Saitta, who grappled with Elder, was bitten in the chest by Elder.

Entirely aside from any constitutionally protected speech or expressive conduct, it is patently clear that there was evidence that each of the defendants was guilty of being disorderly within the meaning of § 53, as we have construed it. All three defendants engaged in "fighting" and in "violent or tumultuous behavior." All of this conduct in the existing circumstances, which showed all three defendants resisting arrest in the midst of a crowd which was hostile and abusive to the police, could clearly be found to have been done with the requisite criminal intent.

There is no merit to the defendants' assertion that directed verdicts should be ordered because of the many inconsistencies in the testimony of witnesses introduced by the Commonwealth. The contention is that an inference should have been drawn of perjury, or police conspiracy. It is true that many inconsistencies appear in the record. Nevertheless, considering the privilege of the jury to use selectively their power to determine the credibility of witnesses, and considering also that there was ample evidence (if believed) to support the jury verdicts, the defendants' argument fails.

3. The defendants, by their motions to dismiss the complaints and their motions for directed verdicts, as well as memoranda of law filed with the trial judge, seasonably raised the issue that the disorderly person provision of § 53 cannot constitutionally be the basis for criminal conviction for the use of protected speech and expressive conduct, even if that speech and conduct may be considered as offensive and abusive. We so held in

*Commonwealth* v. *A Juvenile,* 368 Mass. at 587-595 (1975). It is true that there was evidence of offensive and abusive language addressed by the defendants to the police. However, no error has been shown here in the denial of the various motions.

We have concluded above there was evidence that all three defendants engaged in fighting and violent or tumultuous behavior, and that convictions under § 53 based on such evidence are constitutionally valid.[3] It has not been shown in the record before us that the jury were permitted to consider speech or expressive conduct as evidence of criminal conduct. The judge's charge to the jury is not included in the bill of exceptions.[4] Neither did the defendants offer pertinent requests for jury instructions,[5] or take any exceptions to the charge, so far as appears.

Essentially then, the defendants now ask this court to assume that the judge charged the jury incorrectly. This we decline to do. Since there was evidence that the

---

[3] The defendants challenge the holdings of the *Alegata* case, *supra,* even though we have subsequently narrowed the relevant law by our holdings in *Commonwealth* v. *A Juvenile, supra.* The defendants contend that the term "violent or tumultuous behavior" is unconstitutionally vague, and that the term "threatening" is both vague and overbroad. We need not deal with these contentions, since it was shown that all defendants were also engaged in "fighting."

[4] Nor is there a showing that the failure to bring the charge before us is related to the judge's denial of the defendants' motions to have a stenographer appointed and free transcript provided (see pt. 5 of this opinion, *infra*). Even without such a transcript, it would be a simple matter to focus in the record the judge's treatment of this issue in his instructions to the jury. We observe also that interlocutory instructions by the judge on evidentiary points are included in the bill of exceptions verbatim.

[5] Not that the defendants would be required to offer such requests for instructions in order to protect their rights under the First Amendment to the United States Constitution; we merely comment here that if such requests had been filed and denied, it would be some clue to the instructions which the jury received.

defendants engaged in fighting and violent or tumultuous behavior, entirely apart from any speech of theirs, the judge could appropriately submit the § 53 complaints to the jury with instructions, inter alia, that the speech of the defendants was not to be considered as evidence of guilt. For all that appears, the judge so instructed the jury. If we were to hold on this record that error under the First Amendment has been shown, it would amount to a conclusion that, merely because the violent conduct of the defendants was accompanied by speech, no conviction of the defendants as disorderly persons was permissible. Such a conclusion would be wrong, since we have construed § 53 as constitutionally valid so long as it does not reach protected speech and expressive conduct.

In attempting to discern whether the speech of the defendants was considered by the jury as evidence of guilt, we see no significance in the fact that verdicts of not guilty were returned on the assault and battery complaints as to two of the defendants, Isaac Richards and James Richards. For example, the jury may well have decided to consider the fighting of these two defendants only as it related to the disorderly person complaints against these defendants. For all that appears, they may possibly have regarded that reasoning as mandatory under the judge's charge. In any event, we see no inference arising from a consideration of all the verdicts that any conviction was premised on speech. Nor is it significant that the third defendant, Ocie Elder, was found guilty on both a disorderly person complaint and an assault and battery complaint. There was evidence that he used force and violence against two of the officers, and the jury may have premised its separate results on the two separate episodes.

4. There was no error in the denial of the motion for a directed verdict by the defendant Elder as to the complaint which charged assault and battery against Officer Saitta. There was evidence that Elder bit Saitta in the chest. Nor was there error in the denial of the motion

for a directed verdict addressed to the complaint for drinking in public against the defendant Isaac Richards, since the evidence warranted the jury verdict of guilty.

5. There was no error in the denial of the defendants' motions, filed at the beginning of the trial, for appointment of a stenographer and the supplying of a stenographic transcript to the defendants at public expense. See *Commonwealth* v. *Roberts,* 362 Mass. 357, 368-369 (1972); *Commonwealth* v. *Britt,* 362 Mass. 325, 331-332 (1972). But cf. *Blazo* v. *Superior Court,* 366 Mass. 141, 150-154 (1974).[6]   The defendants were permitted to record the trial on tape using equipment provided by defense counsel.   See Rule 52 of the Rules of the Municipal Court of the City of Boston for Civil Actions (1952), as amended March, 1973 (now Rule 15 of the Rules of the Municipal Court of the City of Boston for Criminal Business, as amended, effective July 1, 1975).   No error arises merely because subsequent events show that the recording, for whatever reason, apparently was defective in places.

*Exceptions overruled.*

[6] We observe that the instant case was tried before the date of issuance of the *Blazo* decision, and therefore the recommendations of that opinion were not available to the trial judge here.