## COMMONWEALTH vs. JOEL FEIGENBAUM.

Barnstable. November 8, 1988. — April 4, 1989.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Idle and Disorderly Person. Practice, Criminal*, Required finding. *Words,*
"No legitimate purpose."

At the trial of a defendant charged under G. L. c. 272, § 53, with being a
disorderly person during a political protest outside a United States Air
Force base, the evidence, including evidence that the defendant blocked
a tow truck and disregarded warnings to move, while sufficient to warrant
the jury in finding that the defendant consciously disregarded a risk of
public inconvenience, annoyance and alarm, and created a hazardous
condition, was insufficient to permit the jury to find that the defendant's
actions were taken without a legitimate purpose. [473-475]

COMPLAINT received and sworn to in the Barnstable Division
of the District Court Department on May 19, 1986.

The case was tried before *Richard P. Kelleher*, J., in the
jury session of that court.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Stuart K. Becker* (*Lawrence K. Glick* with him) for the
defendant.

*Michael O'Keefe*, Assistant District Attorney, for the Com-
monwealth.

O'CONNOR, J. The defendant was arrested during a protest
at Otis Air Force Base in May, 1986, found guilty by a jury of
six of being a disorderly person, and sentenced. He now appeals
the denial of his motion for a required finding of not guilty
made at the close of the Commonwealth's case, on the ground
that the Commonwealth presented insufficient evidence to
prove its case. He also appeals the denial of his motion for
postconviction relief which the judge treated as a motion for
a new trial. We reverse the defendant's conviction on the

ground that the Commonwealth's evidence of disorderly conduct was insufficient to establish his guilt. We do not reach the merits of the defendant's claim for postconviction relief.

Based on the Commonwealth's evidence, the jury could have found the following facts. On May 17, 1986, the defendant was among two or three hundred people engaged in political protest at the Otis Air Force Base in Bourne. During the course of the demonstration, participants carried signs and sang. The crowd began to gather at approximately 8:30 A.M. at a gate at the Air Force base where there is a traffic rotary with an entrance road and an exit road to and from the base. State police were present at the scene, having been notified a week earlier of the planned demonstration. One State trooper testified that he informed the defendant that the police were there to observe the group and ensure that "everything stayed peaceful." As the morning went on, more people joined the protest. Vehicles were illegally parked along both sides of Route 28 and all around the rotary. Route 28 is a four-lane highway with no parking areas along the sides.

Approximately at noon, demonstrators began sitting across the entrance road to the base. That road also leads to a national cemetery, open to the public, on the base. The police, who had not interfered with the demonstration to this point, warned the demonstrators to leave the road and not to block traffic. Between noon and 1 P.M., the police rerouted traffic so that vehicles both entered and exited on the exit road. Approximately two hours later, protesters blocked the exit road. At 2:30 P.M., the police made an announcement that vehicles would be towed. Thereupon, some of the protesters moved their vehicles. At 4:15 P.M., the police again warned that vehicles would be towed, and again some of the protesters moved their vehicles. At 4:30 P.M., the police gave an order to begin towing remaining vehicles parked in the area.

When the tow trucks arrived at the entrance road, thirty people sat in front of the trucks as close as six inches from the wheels. The defendant was in the second row of people about ten feet from a tow truck. When the police pulled people out of the path of the trucks, the people immediately returned

to their places in front of the trucks. The police then began to arrest people for disorderly conduct. Most of them had to be carried to police buses. The defendant was among those picked up from in front of a tow truck and escorted to a bus. One witness testified that the defendant had been "insistent on being arrested."

Thirty-two arrestees were then taken to a gymnasium on the base where they were booked and advised of their rights. At the request of the police, a judge released all of them on personal recognizance. Each of those arrested was given an option to make a statement to the court as to the reasons for his or her actions and to have his or her case dismissed without any admission of guilt upon payment of fifty dollars in court costs. The defendant and twenty-one others refused this choice. The defendant was tried first.

At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty, which the judge denied. A jury-of-six found the defendant guilty, and he was sentenced to two months in a house of correction. The sentence was stayed pending appeal. Subsequently, the district attorney entered a nolle prosequi as to the remaining protesters. The defendant appeals the denial of his motion for a required finding of not guilty. He also appeals the denial of a motion for post-conviction relief on grounds of selective prosecution. We transferred the case to this court on our own initiative. We reverse on the ground that the evidence was insufficient to warrant a finding of the defendant's guilt. We do not reach the selective prosecution question.

The defendant was convicted under G. L. c. 272, § 53 (1986 ed.), which provides that being an "idle and disorderly person[ ]" is a punishable criminal offense.[1] Judicial construction

---

[1] In its entirety, G. L. c. 272, § 53, as appearing in St. 1983, c. 66, § 1, provides: "Common night walkers, common street walkers, both male and female, common railers and brawlers, persons who with offensive and disorderly acts or language accost or annoy persons of the opposite sex, lewd, wanton and lascivious persons in speech or behavior, idle and disorderly persons, disturbers of the peace, keepers of noisy and disorderly houses, and persons guilty of indecent exposure may be punished by imprisonment in a jail or house of correction for not more than six months, or by a fine of not more than two hundred dollars, or by both such fine and imprisonment."

of the term "idle and disorderly" has had a tortured history in the case law of this Commonwealth. In *Alegata* v. *Commonwealth*, 353 Mass. 287, 302 (1967), we determined that "idleness" is a neutral term, thus "[t]he gravamen of the offense is necessarily contained in the word 'disorderly.'" We went on to interpret the word "disorderly" in accordance with § 250.2 of the Model Penal Code (Proposed Official Draft, 1962).[2] "A person is guilty of disorderly conduct if, with purpose to cause ·public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (a) engages in fighting or threatening, or in violent or tumultuous behavior; or (b) makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present; or (c) creates a hazardous or physically offensive condition by any act *which serves no legitimate purpose of the actor*" (emphasis added). *Id.* at 304. Subsequently, in *Commonwealth* v. *A Juvenile*, 368 Mass. 580, 587-597 (1975), we upheld the statute against a charge of constitutional infirmity for vagueness by holding subsection (b) of § 250.2 of the Model Penal Code definition to be unconstitutionally overbroad, and making clear that the statute only can reach conduct "which involves no lawful exercise of a First Amendment right." *Id.* at 599. See also *Commonwealth* v. *Richards*, 369 Mass. 443, 446 n.2 (1976).

In order to sustain the trial judge's denial of a motion for a required finding of not guilty, we must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could· have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Barry*, 397 Mass. 718, 719 (1986), quoting *Jackson* v. *Virginia*, 443 U.S. 307, 319 (1979). The Commonwealth contends that it met its burden of proving the defendant's disorderly conduct by showing that "[the defendant] consciously disregarded a substantial and unjustifiable risk of public inconvenience, annoyance or alarm, and he also consciously disregarded a substantial and unjusti-

---

[2] This language in the draft is the same as the draft we now use. Model Penal Code § 250.2 (Official Draft and Revised Comments, 1980).

fiable risk that he was creating a hazardous or physically dangerous condition by an act which served no legitimate purpose for himself." The Commonwealth's language tracks the Model Penal Code definition of recklessness. It provides that "[a] person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct." Model Penal Code § 2.02 (2)(c) (Official Draft and Revised Comments, 1985).

The defendant argues that the Commonwealth failed to meet its burden of proof as to each of the essential elements of the crime because it did not prove that he acted with "no legitimate purpose." We agree. While the Commonwealth introduced evidence that the defendant blocked a tow truck and disregarded warnings to move, from which the jury would have been warranted in finding that the defendant consciously disregarded a risk of public inconvenience, annoyance and alarm, and created a hazardous condition, the Commonwealth offered no evidence to show that the defendant's actions were taken without legitimate purpose. The Commonwealth does not claim to have proved "fighting" on the defendant's part or threatening or violent or tumultuous conduct within the meaning of § 250.2 (1) (a) of the Model Penal Code definition of disorderly conduct. The Commonwealth's case rests on its proof of disorderly conduct within subsection (c) of the Model Penal Code definition, an essential element of which is that the conduct be undertaken without legitimate purpose of the actor. Therefore, although conduct that is designed to call attention to a political cause, and may therefore have a legitimate purpose, may nevertheless be criminal under the common law or by some statute, it does not constitute disorderly conduct under G. L. c. 272, § 53. Therefore, the conviction for being a disorderly person is reversed, and judgment is to enter for the defendant.

*So ordered.*