COMMONWEALTH *vs.* ROGER MULERO. No. 94-P-1046. May 23, 1995. *Threshold Police Inquiry. Search and Seizure,* Threshold police inquiry. *Constitutional Law,* Search and seizure. *Practice, Criminal,* Admissions and confessions.

The defendant appeals from guilty verdicts on charges of possession with intent to distribute heroin in violation of G. L. c. 94C, § 32, and disorderly conduct in violation of G. L. c. 272, § 53. He was sentenced to five years at M.C.I., Concord, on the drug charge; the disorderly conduct conviction was placed on file without his objection. The defendant attacks both convictions on appeal. Since the defendant has not shown any exceptional circumstances, we do not consider the asserted claims regarding the disorderly conduct conviction. *Commonwealth* v. *Delgado,* 367 Mass. 432, 437-438 (1975). Our review is limited to the denial of the defendant's motion to suppress evidence used to convict him on the drug charge.[1]

We summarize the facts as found by the motion judge. On August 13, 1991, Lowell police Officer Jose Rivera saw the defendant during a routine patrol and recognized him as the person Officer Rivera had arrested six months earlier for possession of a shotgun. Officer Rivera knew that there had been no court action on the offense, and he was concerned that the defendant might have defaulted on a court appearance and that an arrest warrant might have issued for him. Officer Rivera wanted to talk to the defendant to find out what was happening with the shotgun case. By the time the officer had stopped the cruiser, the defendant was standing at the right rear of the vehicle. Officer Rivera left the cruiser and called to the defendant to come to him near the driver's side. The defendant walked around the rear of the cruiser and faced Officer Rivera, standing four to five feet away.

When Officer Rivera asked the defendant if he had gone to court on that case, the defendant did not respond. Officer Rivera then instructed his partner to radio for a warrant check. Officer Rivera asked the defendant his date of birth, and he again did not respond. Officer Rivera testified that at this point the defendant was not free to leave the scene. As the warrant check proceeded, the defendant began shouting profanities at the officers and demanded to know why he was being harassed. Officer Rivera instructed the defendant to place his hands on the car so that he could conduct a pat search. Instead, the defendant continually removed his hands from the car and kept shoving them in the pockets of the baggy pants he was wearing, all the while shouting obscenities and complaining that he wanted his cigarettes. By this time, a crowd had gathered near the cruiser to watch. Officer Rivera, aware of the defendant's earlier gun offense, warned the defendant to stop removing his hands from the car. He also instructed the defendant to settle down or he would be arrested for disor-

---

[1]The defendant's argument that the prosecutor's statements in closing argument entitle him to a new trial is without merit.

derly conduct. When the defendant continued to flail his arms, shout obscenities, and turn around to face the officer, he was arrested for disorderly conduct. The defendant was handcuffed and placed in the cruiser to be removed immediately from the scene where the crowd gathered near the cruiser had grown to approximately thirty people from the neighborhood.

While in the cruiser, the defendant began shouting the words "pork chop" in Spanish. Coincidentally, this was Officer Rivera's nickname, and he turned around in the driver's seat to view the defendant in the back seat. Officer Rivera saw the defendant looking at an individual standing near the front of the cruiser as he yelled in Spanish, "Pork chop, pork chop, can you pick up the bag that I dropped underneath the cruiser?" As the cruiser pulled away, Officer Rivera observed the individual to whom the defendant was gesturing walk to the rear of the vehicle. The defendant then shouted to the individual, "Give the package to that guy. Get the bags and give them to that guy." Officer Rivera stopped the cruiser and proceeded to the rear where he observed a small crumpled brown paper bag. He opened it and observed numerous smaller plastic bags containing a white substance later determined to be heroin.

The defendant contends that the judge should have granted his motion to suppress both the paper bag containing heroin and his own incriminating statements because such evidence constituted fruits of an initial unjustified stop of the defendant. *Wong Sun* v. *United States*, 371 U.S. 471 (1963). *Commonwealth* v. *Pimentel*, 27 Mass. App. Ct. 557, 559-560 (1989). We disagree. First, the bag of heroin was properly admissible. There was nothing inappropriate in Officer Rivera initiating contact with the defendant to determine the status of the shotgun case. *Commonwealth* v. *Sanchez*, 403 Mass. 640, 644 (1988). *Commonwealth* v. *Fraser*, 410 Mass. 541, 543-544 (1991). *Commonwealth* v. *Doulette*, 414 Mass. 653, 655-656 (1993). *Commonwealth* v. *Thinh Van Cao*, 419 Mass. 383, 388 n.7 (1995). Officer Rivera's personal knowledge of the defendant's prior arrest on the shotgun offense and his reasonable concern that the defendant had defaulted on a court appearance causing an arrest warrant to issue provided reasonable articulable grounds for Officer Rivera to conduct a brief investigatory threshold inquiry. *Terry* v. *Ohio*, 392 U.S. 1 (1968). *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). Notwithstanding Officer Rivera's statement that the defendant was not free to leave the scene, nothing in the *initial* inquiry by the officer indicated that the defendant had been seized — that a reasonable person would not have felt free to terminate the encounter. There was no display of authority or similar coercive action. See *Commonwealth* v. *Borges*, 395 Mass. 788, 791-792 & n.3 (1985); *Commonwealth* v. *Sanchez*, 403 Mass. at 643-644; *Commonwealth* v. *Pimentel*, 27 Mass. App. Ct. at 560; *Commonwealth* v. *Moore*, 32 Mass. App. Ct. 924, 924 (1992). In addition, Officer Rivera never engaged in any pursuit of the defendant, who was already standing near the cruiser when it stopped and who freely approached Officer Rivera at the

driver's side when summoned. Compare *Commonwealth* v. *Thibeau*, 384 Mass. 762, 764 (1981) ("a stop starts when pursuit begins"). The defendant relinquished control of the bag of heroin prior to approaching Officer Rivera and before any seizure. Since the defendant was not seized and thus no rights under the Fourth Amendment to the United States Constitution attached at the time he dropped the heroin, see *Commonwealth* v. *Marrero*, 33 Mass. App. Ct. 440, 442 (1992), Officer Rivera was free to retrieve the discarded bag that was abandoned on the roadway without any prompting or wrongdoing on the part of the officer. See *Commonwealth* v. *Battle*, 365 Mass. 472, 475-476 (1974); *Commonwealth* v. *Wooden*, 13 Mass. App. Ct. 417, 420 (1982); *Commonwealth* v. *Pimentel*, 27 Mass. App. Ct. at 562.

Likewise, the defendant's voluntary statements followed a valid arrest of the defendant as the officers had sufficient probable cause to arrest him on a charge of disorderly conduct.[2] The defendant's actions of removing his hands from the cruiser, flailing them in an agitated and belligerent manner while berating Officer Rivera with loud profanities, and shoving his hands into the pockets of his baggy shorts, especially in light of Officer Rivera's previous encounter with the defendant on a gun charge, constituted tumultuous or threatening behavior beyond protected expressive speech or conduct. See *Commonwealth* v. *A Juvenile*, 368 Mass. 580, 585-592 (1975). The motion to suppress was properly denied.

*Judgment affirmed.*

*Margaret Wermer* for the defendant.
*David C. Megan*, Assistant District Attorney, for the Commonwealth.

---

[2]*Commonwealth* v. *Delgado, supra,* does not restrain us from considering the disorderly conduct conviction placed on file for the purpose of determining the suppression issue.