Commonwealth *vs.* Thelma M. Zettel.

No. 97-P-1426.

Bristol. September 10, 1998. - March 16, 1999.

Present: Armstrong, Dreben, & Jacobs, JJ.

*Idle and Disorderly Person. Practice, Criminal,* Required finding. *Words,* "Tumultuous."

Discussion of G. L. c. 272, § 53 (and cases and comments thereunder), which renders "idle and disorderly" conduct a punishable criminal offense. [472-475, 475-476]

At the trial of a complaint for being a disorderly person in violation of G. L. c. 272, § 53, the evidence was not sufficient to warrant a finding that the defendant engaged in "tumultuous" behavior [475], nor did the Commonwealth prove that the defendant's creation of an arguably "hazardous . . . condition" served no "legitimate purpose" [475]: the defendant was entitled to a finding of not guilty.

COMPLAINT received and sworn to in the Fall River Division of the District Court Department on January 15, 1997.

The case was tried before *John H. O'Neil,* J.

*Richard M. Russell* for the defendant.

*David Keighley,* Assistant District Attorney, for the Commonwealth.

DREBEN, J. Double-parked behind a school bus while waiting for her six and one-half year old son to emerge from elementary school, Thelma Zettel refused to move her car despite being repeatedly told to do so by a police officer. This incident led to argument, to arrest, and, ultimately, to Zettel's conviction (by a jury) as a disorderly person under G. L. c. 272, § 53.[1]

Represented by counsel on appeal — she had appeared pro se in the District Court — the defendant claims there was insuf-

---

[1]The defendant had also been charged with resisting arrest and assault and battery on a public servant; the former charge was dismissed and the defendant was found not guilty of the latter.

ficient evidence to convict her of the offense and that the judge improperly permitted the jury to consider constitutionally protected speech in determining the defendant's intent. We agree with the defendant's first contention and, therefore, need not reach the second claim of error.

Based on the Commonwealth's evidence presented through its sole witness, police officer Robert Deschenes, the jury could have found the following facts. The Wixon Elementary School is located at the corner of Whipple and Hamlet Streets in Fall River. Whipple Street, a one-way street, is extremely congested, particularly around school drop-off and release times. Buses double-park on a portion of the street (where the road is wider), and, during school release times, vehicles tend to double-park, obstructing the street.

On January 14, 1997, at school release time, there was a traffic tie up on Whipple Street. Using his siren and horn, Officer Deschenes managed to move to the front of the line of traffic and noticed that two vehicles, double-parked directly behind the buses, were causing the problem. One moved at his command, but the second, driven by the defendant, did not. Despite his informing her that her car was illegally parked and was a safety hazard for the children, she refused to budge, stating that she was picking up her child. After again unsuccessfully trying to persuade her to move, Deschenes gave her a ticket insisting that the car be moved. When the defendant left the car and walked to the schoolyard, Deschenes raised his voice and informed her that the vehicle would be towed. She returned and drove into a private driveway on the opposite side of the street, leaving the nose of the car still in the roadway, obstructing the sidewalk. Once again he told her she would have to move the car or it would be towed. She responded, "You have nothing better to do. I'm here to pick up my kid." Because she was "becoming loud," "had refused to park the car legally," and because "it was becoming a pretty serious safety hazard," Deschenes decided to place the defendant under arrest. She attempted to resist, saying she wasn't going to be arrested; she was there to get her child and would not leave until she picked up her child. Deschenes struggled with the defendant and handcuffed her. She kicked him, and was taken to the police station and booked. The car was towed, and Deschenes arranged for the school to keep the child.

The statute at issue, G. L. c. 272, § 53, set forth in the

margin,[2] renders "idle and disorderly" conduct a punishable criminal offense. As pointed out in *Commonwealth* v. *Feigenbaum*, 404 Mass. 471, 473-474 (1989), "[j]udicial construction of the term 'idle and disorderly' has had a tortured history in the case law of this Commonwealth." In *Alegata* v. *Commonwealth*, 353 Mass. 287, 302 (1967), the term "idle" was considered neutral; thus, "[t]he gravamen of the offence is necessarily contained in the word 'disorderly.' " The clause withstood constitutional challenge on the ground of vagueness by reference to the behavior "singled out in § 250.2 of the Model Penal Code (Proposed Official Draft[, 1962])." *Id.* at 304. See Smith, Criminal Practice & Procedure § 6 (2d ed. 1983 & 1998 Supp.). Subsequently, terming the statute "archaic," the court in *Commonwealth* v. *A Juvenile*, 368 Mass. 580, 587-599 (1975), narrowed the definition of "idle and disorderly" to exclude subsection (b) of § 250.2 of the Model Penal Code[3] — "disorderly" conduct may now only be "validly . . . applied to conduct which involves no lawful exercise of a First Amendment right." As thus construed, and as reiterated in *Feigenbaum*, 404 Mass. at 474, "disorderly" conduct, in accordance with § 250.2 of the Model Penal Code,[4] is defined as follows:

> "A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> > "(a) engages in fighting or threatening, or in violent or tumultuous behavior; or . . .

[2]General Laws c. 272, § 53, as amended through St. 1983, c. 66, § 1, provides: "Common night walkers, common street walkers, both male and female, common railers and brawlers, persons who with offensive and disorderly acts or language accost or annoy persons of the opposite sex, lewd, wanton and lascivious persons in speech or behavior, idle and disorderly persons, disturbers of the peace, keepers of noisy and disorderly houses, and persons guilty of indecent exposure may be punished by imprisonment in a jail or house of correction for not more than six months, or by a fine of not more than two hundred dollars, or by both such fine and imprisonment."

[3]Subsection (b) of § 250.2 is set forth in *Commonwealth* v. *Richards*, 369 Mass. 443, 446 n.2 (1976).

[4]The language of the section in the Proposed Official Draft of the Model Penal Code (1962) does not differ from that contained in the Official Draft of 1980. See *Commonwealth* v. *Feigenbaum*, 404 Mass. at 474 n.2. Where cited in this opinion, the Official Draft and Revised Comments (1980) of the Model Penal Code are used.

"(c) creates a hazardous or physically offensive condition by any act *which serves no legitimate purpose of the actor*" (emphasis supplied in *Feigenbaum*).

The Commonwealth argues that the evidence supports both sections of the definition — the defendant's actions constituted tumultuous conduct and also created a hazardous condition by acts which served no legitimate purpose of the defendant.

1. *Tumultuous behavior.* Turning to the ordinary dictionary definition, we find that "tumultuous" is defined as "1: marked by tumult: full of commotion and uproar: riotous, stormy, boisterous . . . 2: tending or disposed to cause or incite a tumult . . . 3: marked by violent or overwhelming turbulence or upheaval." Webster's Third New Intl. Dictionary 2462 (1993).[5]

Massachusetts cases are in accord with these definitions. See *Commonwealth* v. *A Juvenile*, 368 Mass. at 597 (noting that the statute covers " 'tumultuous behavior,' which, while perhaps not physically violent, may nevertheless be characterized as involving riotous commotion and excessively unreasonable noise so as to constitute a public nuisance").

Other cases inform. In *Commonwealth* v. *Richards*, 369 Mass. 443, 448 (1976), the defendants were held to have engaged in "fighting" and in "violent or tumultuous behavior." Due to their actions — drinking alcohol in a crowded mall, resisting arrest, punching and cursing police — a crowd of some two hundred people became hostile and abusive and threw "bundles of newspapers, books, and other debris" at the police. *Id.* at 447.

In *Commonwealth* v. *Carson*, 10 Mass. App. Ct. 920, 921 (1980), campus police responding to a complaint of a "disturbance" found the defendant, a college student, drunk and belligerent. Cursing at the police officers, he attracted a crowd of

---

[5]"Tumult" is defined as "1a: disorderly and violent movement, agitation or milling about, of a crowd accompanied [usually] with great uproar and confusion of voices: commotion, turmoil." Webster's Third New Intl. Dictionary 2462 (1993).

In the American Heritage Dictionary of the English Language (3d ed. 1992), "tumult" is defined as "1. The din and commotion of a great crowd. 2.a. A disorderly commotion or disturbance. b. A tempestuous uprising; a riot," and "tumultuous" as "1. Characterized by tumult; noisy and disorderly. 2. Tending to cause tumult."

fifty people, some of whom "laugh[ed] or yell[ed] abuse at the police." *Ibid.* His intoxication, belligerence, and his manner of resisting apprehension "could be fairly characterized as 'tumultuous'·" and needlessly exacerbated a situation which "might have moderated of its own accord." *Id.* at 922.

In another case, the "defendant's actions of removing his hands from the [police] cruiser, flailing them in an agitated and belligerent manner while berating [police] Officer Rivera with loud profanities, and shoving his hands into the pockets of his baggy shorts, especially in light of Officer Rivera's previous encounter with the defendant on a gun charge, constituted tumultuous or threatening behavior beyond protected expressive speech or conduct." *Commonwealth* v. *Mulero*, 38 Mass. App. Ct. 963, 965 (1995). Such actions, which led a crowd of about thirty persons to gather, provided the police with probable cause to arrest the defendant on a charge of disorderly conduct. *Id.* at 963-965.

In the present case, by contrast, the jury were not warranted in finding that the defendant, "with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," engaged in tumultuous behavior as defined by statute, case law, or lexicon.

2. *Conduct which serves no legitimate purpose.* While the Commonwealth's evidence that the defendant did not heed the officer's warnings, failed to move her car, and illegally parked in a private driveway, warranted, perhaps, a finding that the defendant created "a hazardous or physically offensive condition," the Commonwealth offered no evidence to show that the defendant's action served no legitimate purpose. In *Feigenbaum*, 404 Mass. at 475, the court held that although behavior which was motivated by political purposes could be found to have created a hazardous condition, and might be considered "criminal under the common law or by some statute," such behavior "does not constitute disorderly conduct under G. L. c. 272, § 53," because it has "a legitimate purpose."

The Commonwealth would have us confine *Feigenbaum* and the term "no legitimate purpose" to situations involving political expression. However, neither the opinion nor the Model Penal Code suggests such a limitation. Indeed, another section

.

of the Model Penal Code, § 250.4, defining "harassment,"[6] described in the comment as "a companion offense to disorderly conduct under § 250.2," contains the same phrase. Model Penal Code § 250.4 comment 1, at 360. Commenting on the catchall language of subsection (5) of § 250.4, which covers "any other course of alarming conduct serving no legitimate purpose of the actor," the drafters stated, "The import of the phrase . . . is broadly to exclude from this subsection any conduct that directly furthers some legitimate desire or objective of the actor." Model Penal Code § 250.4 comment 5, at 368. See *Commonwealth* v. *Wheaton*, 409 Pa. Super. 622, 628 (1991) (defendant's efforts to maintain his water supply constituted a legitimate purpose precluding conviction of harassment). See also *DiDonna* v. *Di-Donna*, 72 Misc. 2d 231, 233 (N.Y. Fam. Ct. 1972) (preservation of marriage a legitimate purpose).

While the comment to § 250.4 of the Model Penal Code is noteworthy, far more significant is the language of § 250.2(c), as construed by *Feigenbaum*. There is no reason provided by that case or other authority to view a political cause as anything other than one of a number of "legitimate purposes" under § 53. Surely, a mother's interest in picking up her six and one-half year old son when he was released from school falls within the definition.

The judgment of conviction for being a disorderly person is reversed, and the verdict is set aside. Judgment is to enter for the defendant.

*So ordered.*

---

[6]Section 250.4 provides as follows: "A person commits a petty misdemeanor if, with purpose to harass another, he:

"(1) makes a telephone call without purpose of legitimate communication; or

"(2) insults, taunts, or challenges another in a manner likely to provoke violent or disorderly response; or

"(3) makes repeated communications anonymously or at extremely inconvenient hours, or in offensively coarse language; or

"(4) subjects another to an offensive touching; or

"(5) engages in any other course of alarming conduct serving no legitimate purpose of the actor."