## Commonwealth *vs.* Hertzl Sinai.

No. 97-P-1738.

Plymouth. May 11, 1999. - August 5, 1999.

Present: KASS, PORADA, & LENK, JJ.

*Idle and Disorderly Person. Practice, Criminal,* Instructions to jury, Required finding, Argument by prosecutor. *Constitutional Law,* Freedom of speech and press. *Words,* "Fighting," "Tumultuous behavior."

At the trial of a complaint of being a disorderly person, the judge clearly and correctly instructed the jury on the elements of the offense and adequately conveyed to the jury that the defendant could not be convicted based solely on the exercise of his First Amendment rights. [546-547]

Evidence at the trial of a complaint of being a disorderly person was sufficient to warrant a rational trier of fact to find that the defendant's conduct constituted fighting or tumultuous conduct committed for the purpose of causing public inconvenience, annoyance or alarm, or recklessly creating a risk thereof. [547-549]

At the trial of a criminal case, the prosecutor's arguably overzealous remarks in closing argument created no substantial risk of a miscarriage of justice. [549-550]

COMPLAINT received and sworn to in the Plymouth Division of the District Court Department on July 16, 1990.

Following review by this court, 33 Mass. App. Ct. 1114 (1994), the case was retried before *Don L. Carpenter,* J.

*Daniel W. Rice* for the defendant.

*Mary E. Mullaney,* Assistant District Attorney, for the Commonwealth.

PORADA, J. The defendant was found guilty by a jury in the District Court of being a disorderly person under G. L. c. 272, § 53. On appeal, he claims that the District Court judge erred in failing to instruct the jury that the Commonwealth must prove beyond a reasonable doubt that the defendant's conduct could not have served any legitimate purpose, *including the exercise of First Amendment rights,* and in failing to allow the

defendant's initial motion for a required finding of not guilty. The defendant also contends that the prosecutor's remarks during closing argument regarding the need for adherence to the "rules of civilized society" lest danger and chaos result constituted reversible error. We affirm the conviction.

Based on the Commonwealth's direct evidence, the jury could have found the following facts. In order to use the beach parking lot in the town of Plymouth, one was required to have a sticker or pay a five-dollar parking fee. On July 16, 1990, when the defendant drove into the parking lot, the parking attendant on duty was Scott Milner. Milner asked the defendant if he had a sticker. The defendant conceded he did not but explained that he was driving a rental car, he did reside in Plymouth, and his sticker was on his own car, which was being repaired. Milner said that without a sticker the defendant would have to pay the five-dollar parking fee. When the defendant heard that he would have to pay the fee, the defendant began yelling at Milner that he was a taxpayer in Plymouth and that he didn't believe he had to pay. Milner informed the defendant that he was still obligated to pay the fee whereupon the defendant began yelling obscenities and slurs at Milner and said he wasn't going to pay the fee. Milner then asked police officer Higgins, who was standing nearby, for assistance. When Higgins approached the defendant in his car, he asked the defendant to calm down. In response, the defendant became "more animated," swore at the officer, told him that he didn't have to pay because he was a taxpayer of Plymouth, and began bouncing around in the driver's seat and pounding on the steering wheel with both hands. In the meantime, cars began to back up behind the defendant's car. Milner waved those that had a sticker on their car into the parking lot but the drivers would slow down as they passed the defendant's car to see what was happening. At some point after the defendant continued to refuse to pay the fee or leave, Higgins told the defendant he was placing him under arrest for disorderly conduct and asked the defendant to shut off his car engine and step out of the car. When Higgins opened the defendant's car door, the defendant threw a punch at Higgins so that he could shut his car door. As a result, Higgins backed off and called for assistance from other officers. The defendant then shut his car door and remained in his car. In response to Higgins's call, officer Correa arrived on the scene. Correa observed ten or twenty people standing in the vicinity of the defendant's

vehicle and Milner directing traffic away from the entrance to the parking lot. After talking to officer Higgins, Correa approached the defendant and told him he was under arrest and to step out of the vehicle. The defendant responded by yelling and screaming at the officer and pounding the steering wheel. The defendant refused to get out the car. Correa then opened the door to remove the defendant but the defendant resisted by holding onto the steering wheel. Correa with the assistance of two other officers forcibly removed the defendant from the car as the defendant continued to resist by flailing his arms about and attempting to strike officer Correa. The defendant was eventually handcuffed and placed in the police cruiser.

We address the defendant's claims of error.

1. *The judge's instructions.* The defendant claims that his conduct was nothing more than a protest against paying the parking fee and he was insulated from prosecution as a disorderly person under G. L. c.272, § 53, which he claims does not criminalize conduct that serves a legitimate purpose. He, therefore, argues that the trial judge committed error in failing to instruct the jury that the Commonwealth must prove beyond a reasonable doubt that the defendant's conduct could not have served any legitimate purpose, including the exercise of rights under the First Amendment to the United States Constitution. The defendant's argument fails for several reasons. First and foremost is the fact that the judge on three occasions informed the jury that one of the elements the Commonwealth must prove beyond a reasonable doubt is that the defendant engaged in at least one of the following actions: "he either engaged in fighting or threatening, or engaged in violent or tumultuous behavior, or created a hazardous or physical offensive condition *by an act that served no legitimate purpose* . . . (emphasis supplied)." Such an instruction comports with the specific conduct described in *Commonwealth* v. *A Juvenile*, 368 Mass. 580, 586, 599 (1975) and reiterated in *Commonwealth* v. *Feigenbaum*, 404 Mass. 471, 473-474 (1989), as constituting disorderly conduct.

The judge further specifically instructed the jury that "you cannot convict on speech alone. No matter how coarse, how offensive, or how abusive that speech may be. For speech alone, as a matter of law, does not and cannot constitute disorderly conduct unless it is your determination that they are fighting words or threats." This instruction adequately conveyed to the

jury that the defendant could not be convicted based solely on the exercise of his First Amendment rights. A trial judge is not required to instruct the jury in the terms requested by a defendant so long as the substance of the requested instructions is adequately covered. *Commonwealth* v. *Ames*, 410 Mass. 603, 609 (1991). *Commonwealth* v. *Chamberlin*, 22 Mass. App. Ct. 946, 950 (1986).

Secondly, the defendant's reliance on *Commonwealth* v. *Feigenbaum*, 404 Mass. at 471, for the proposition that such an instruction was required in this case is misplaced. In *Feigenbaum*, the Commonwealth claimed that the defendant's blocking of traffic on an exit road from Otis Air Force Base by sitting in the roadway and refusing to move as part of a political protest constituted disorderly conduct. As the Supreme Judicial Court noted in that case, the Commonwealth's proof was based on the premise that the defendant created a hazardous condition which served no legitimate purpose. *Id.* at 475. Here, the Commonwealth's case rests primarily on proof that the defendant was engaged in fighting, threatening to fight, or tumultuous behavior that did not require proof as an additional factor that the defendant's conduct served no legitimate purpose. *Ibid.* Consequently, the instruction which the defendant now claims should have been given would have been overly inclusive.[1]

When the judge's instructions are read as a whole, the jury were properly instructed on the elements required for proof of disorderly conduct. See *Commonwealth* v. *A Juvenile*, 368 Mass. at 596-599; *Commonwealth* v. *Feigenbaum*, 404 Mass. at 475.

2. *Motion for required finding.* The defendant argues that the Commonwealth's proof was insufficient to establish that the defendant was a disorderly person because the Commonwealth failed to show that his protest against paying a fee for parking in the municipal parking lot as a taxpayer of Plymouth did not serve a legitimate purpose, including the exercise of First

---

[1]The record does not contain the defendant's request for instructions. Although it is clear from a colloquy between the judge and defense counsel that defense counsel desired an instruction from the *Feigenbaum* case that the defendant could not be convicted based on his exercise of free speech, the exact content of the instruction being requested by the defendant is unknown. We also note that the defendant did not object to the judge's omission to give the instruction in question or object to the judge's instruction that the defendant could not be convicted on speech alone. Notwithstanding this omission, the judge in this colloquy stated he would save the defendant's rights so we have treated the defendant's claim of error as properly preserved.

Amendment rights. As noted above, the defendant's argument overlooks that the Commonwealth need only prove that the defendant's conduct served no legitimate purpose when it claims that the defendant created a hazardous or offensive condition. *Ibid.* In this case, the Commonwealth's case rested primarily on proof that the defendant had engaged in fighting or violent and tumultuous behavior. "Fighting" is descriptive of conduct which by its very nature involves the use of physical force or violence or any threat to use such force or violence if that threat is objectively possible of immediate execution. *Commonwealth* v. *A Juvenile*, 368 Mass. at 596-597. "Tumultuous behavior" is conduct which may be characterized as involving riotous commotion and excessively unreasonable noise so as to constitute a public nuisance. *Id.* at 597. In either case, disorderly conduct embraces those activities which intentionally tend to disturb the public tranquility or alarm or provoke others. *Id.* at 597-598. *Commonwealth* v. *LePore*, 40 Mass. App. Ct. 543, 545-546 (1996).

In *Commonwealth* v. *Zettel*, 46 Mass. App. Ct. 471 (1999), we discussed what conduct may constitute tumultuous conduct. In that case, we held that the defendant's refusal to obey a police officer's request to move or park her car legally, speaking loudly to the officer, and resisting arrest did not rise to the level of riotous commotion or unreasonable noise constituting a public nuisance which constitutes tumultuous conduct as matter of law. *Id.* at 474-475. See Model Penal Code § 250.2 (Proposed Official Draft 1962). However, in *Zettel*, there was no evidence that the defendant's belligerent conduct attracted a crowd of onlookers; that the defendant's verbal remonstrances though loud were characterized as screaming and yelling or were protracted; or that the defendant's resisting of arrest required more than one officer to subdue her. Unlike the *Zettel* case, the defendant's belligerent conduct in this case comprised screaming and yelling in succession at the parking attendant and then two police officers, pounding on the steering wheel of his car with both hands, attempting to strike two police officers and forcibly resisting arrest by three police officers, which attracted a crowd of twenty onlookers and caused traffic to be rerouted. Such conduct is akin to other cases in which convictions for disorderly conduct have been upheld. Cf. *Commonwealth* v. *Richards*, 369 Mass. 443, 446-448 (1976) (three defendants shouted obscenities, fought with police officers and resisted ar-

rest in the midst of a crowd which was hostile and abusive to the police and in which there was drinking of alcoholic beverages warranted findings of disorderly conduct); *Commonwealth v. Carson,* 10 Mass. App. Ct. 921, 922-923 (1980) (defendant who was drunk became belligerent when approached by police and resisted arrest while a crowd of approximately fifty people gathered was guilty of disorderly conduct); *Commonwealth v. Mulero,* 38 Mass. App. Ct. 963, 965 (1995) (defendant's actions of removing his hands from a police cruiser, flailing them in an agitated and belligerent manner while berating a police officer with loud profanities and shoving his hands into the pockets of his baggy shorts while a crowd of thirty people gathered sufficient to constitute probable cause to arrest the defendant on a charge of disorderly conduct).

In sum, apart from any evidence of speech or expressive conduct, when the evidence in this case is viewed in the light most favorable to the Commonwealth, *Commonwealth v. Latimore,* 378 Mass. 671, 676-677 (1979), a rational fact finder could find that the defendant's conduct did, indeed, constitute fighting or tumultuous conduct which was committed with the purpose of causing public inconvenience, annoyance or alarm or recklessly creating a risk thereof. *Commonwealth v. Feigenbaum,* 404 Mass. at 475. The judge did not err in denying the motion.

3. *Closing argument.* The defendant claims the prosecutor committed reversible error when in closing argument he argued: "Now, I'll just say this to you this is an important case as I said to you in my opening. It's important because I would suggest to you that rules are important because rules equal order. In our society if there were no rules I would suggest to you there'd be chaos. And, to go one step further, I would suggest to you that order equals safety. And chaos equals danger. And that's why we have rules." The defendant claims that those remarks improperly warned the jurors that their verdict would have adverse consequences posttrial. See *Commonwealth v. Burke,* 373 Mass. 569, 575 (1977) (prejudicial error resulted from prosecutor's argument that if the jury failed to convict the defendant someone like that is going out on the street again). The defendant did not object to those comments at trial and, thus, our review is limited to determining whether they created a substantial risk of miscarriage of justice. *Commonwealth v. Marquetty,* 416 Mass. 445, 449-450 (1993). In light of the

prosecutor's entire closing argument, the judge's admonition to the jury that closing arguments were not evidence and the strength of the evidence adduced at trial, these comments, though arguably overzealous, appear to be no more than hyperbole, which a jury of reasonable sophistication was capable of sorting out. *Id.* at 451. There was no substantial risk of a miscarriage of justice. *Commonwealth* v. *Costa*, 414 Mass. 618, 629 (1993) (no substantial risk of miscarriage of justice when judge instructed that closing arguments were not evidence and that prosecutor's comments were no more than "enthusiastic rhetoric, strong advocacy and excusable hyperbole").

*Judgment affirmed.*