SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. MANOLO M., a juvenile (and two companion cases[1])

 
 Docket:
 SJC-13606 / SJC-13607 / SJC-13608
 
 
 Dates:
 January 8, 2025 - July 8, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, & Dewar, JJ.
 
 
 County:
 Plymouth
 

 
 Keywords:
 Resisting Arrest. Delinquent Child. Juvenile Court, Delinquent child. Practice, Criminal, Complaint, Required finding. Constitutional Law, Freedom of speech and press. Probable Cause. Statute, Construction.
 
 

  
      Complaints received and sworn to in the Plymouth County Division of the Juvenile Court Department on October 4, 2019.
      Following review by this court, 486 Mass. 678 (2021), the cases were tried before Dana Gershengorn, J.
      After review by the Appeals Court, 103 Mass. App. Ct. 614 (2023), the Supreme Judicial Court granted leave to obtain further appellate review.
      Eva G. Jellison (Myles Manlapaz also present) for Frederick F.
      Michelle Menken for Manolo M.
      Melissa Allen Celli for Angela A.
      Elizabeth A. Mello Marvel, Assistant District Attorney, for the Commonwealth.
      Aaron S. Oakley, of Colorado, Mitchell Kosht, Katharine Naples-Mitchell, Radha Natarajan, & Claudia Leis Bolgen, for Criminal Justice Institute at Harvard Law School & others, amici curiae, submitted a brief.
      Cristina F. Freitas & Debbie F. Freitas, Committee for Public Counsel Services, for youth advocacy division of the Committee for Public Counsel Services & another, amici curiae, submitted a brief.
      DEWAR, J.  A jury adjudicated three juveniles, Frederick F., Angela A., and Manolo M., delinquent on charges of resisting arrest in violation of G. L. c. 268, § 32B.  The juveniles press arguments pertaining to two elements of this offense. 
      First, Frederick and Angela challenge the sufficiency of the evidence at trial that the arresting officers were "acting under color of . . . official authority" as defined by the statute to mean that the officers made "a judgment in good faith" to arrest, G. L. c. 268, § 32B (b), and Frederick argues that the complaint against him should have been dismissed for lack of probable cause on this element.  Frederick and Angela contend that, because their conduct prior to their arrests did not supply probable cause to arrest them for any offense or even the basis for a good-faith judgment that probable cause existed, a rational fact finder could not infer that their respective arresting officers made judgments in good faith to arrest; rather, the juveniles contend, their conduct was protected by the First Amendment to the United States Constitution.
      We agree that, where the circumstances known to an arresting officer did not permit at least a good-faith judgment that probable cause to arrest the defendant existed, a motion to dismiss or for a required finding should be allowed under G. L. c. 268, § 32B (b).  We do not agree, however, with the juveniles' assessment of the factual circumstances here, on the basis of which a rational fact finder could conclude that the officers formed judgments in good faith to arrest the juveniles for conduct not protected by the First Amendment.  The judge therefore properly denied Frederick's motion to dismiss and both juveniles' motions for required findings on this element.
      Second, Angela and Manolo each argue that the evidence at trial was insufficient to establish that they engaged in either of the two specific means of resisting arrest prohibited by the statute:  "using or threatening to use physical force or violence against" the arresting officer, or "using any other means which creates a substantial risk of causing bodily injury."  G. L. c. 268, § 32B (a) (1)-(2).  We conclude, based on the requisite "intensely factual, nuanced inquiry," Commonwealth v. Hart, 467 Mass. 322, 328 (2014), that Angela's and Manolo's motions for required findings on this element were properly denied, because the Commonwealth presented sufficient evidence from which the jury could rationally infer that the juveniles used physical force against their respective arresting officers.
      We accordingly affirm the juveniles' delinquency adjudications for resisting arrest.[2]  
      Background.  1.  Commonwealth's case.  We recite the facts in the light most favorable to the Commonwealth, reserving some details for our discussion of the issues.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). 
      On October 3, 2019, Brockton High School students were scheduled to be dismissed early at 11 A.M.  More than 4,000 students attended the school.  There had been fights among students in the prior week, and police had been alerted that "multiple fights" were anticipated that day.  The commanding officer of the Brockton school police department, which is overseen by the Brockton police department, had summoned "every" school police officer and "any Brockton Police that [he] could get a hold of" to maintain order.  Shortly after school was dismissed, a student was assaulted by another student on nearby Forest Avenue, and a responding officer was accidentally struck by the victim of the assault.  Police then received a report of a second assault in progress on Forest Avenue.  While officers were responding to that report, police received a further report, of another assault as well as a large crowd of students causing a disturbance and disrupting the flow of traffic on Florence Street, the site of the events at issue here.  
      Responding officers found a crowd of approximately one hundred students on Florence Street.  Attempting to disperse the crowd, officers activated their cruisers' lights and sirens and used their public address systems.  The crowd did not immediately disperse, however.
      Among the responding officers was school resource officer Raymond Parrett.  As he drove down Florence Street, the crowd of students made it impossible to drive more than five miles per hour.  Frederick and Angela were walking down Florence Street as Parrett slowly drove past.  Frederick stuck his head through the cruiser's open window and yelled, "Fuck the police."  In response, Parrett stopped his vehicle, exited, and asked Frederick what he had said.  Frederick, putting his hands up, responded that he does not answer questions.  
      While Parrett spoke to Frederick, Angela started recording the interaction using her cell phone camera, holding the cell phone inches from Parrett's face and asking Parrett why he was harassing people.  Parrett repeatedly knocked the cell phone out of Angela's hands as she persisted in thrusting it close to his face.  
      Observing these interactions between Parrett and Angela, another student, whom we will call Thomas, see note 1, supra, poked Parrett's shoulder and asked him what he was doing.  Parrett pushed Thomas back, and Parrett and Thomas subsequently "rolled around" on the ground during Parrett's efforts to arrest Thomas.  
      As Parrett and Thomas struggled on the ground, school resource officer Daniel Vaughn positioned himself near Parrett to shield him from the crowd.  That crowd included Manolo, who, seeking to reach Parrett and Thomas, attempted to run past Vaughn.  After Vaughn told Manolo several times to get back, Manolo charged Vaughn, and Vaughn pushed him back.  Manolo assumed a fighting stance; said, "[L]et's go mother f'er, let's go"; and swung at Vaughn's head with a closed fist.  Vaughn blocked Manolo's attempted punch; kicked Manolo's thigh with, in Vaughn's words, "[e]nough force to stop [Manolo] from coming at [him]"; and yelled at Manolo to get back.  Manolo again approached, and he and Vaughn fell to the ground.  Manolo's arrest ensued, regarding which we reserve the details of the Commonwealth's evidence for our discussion of the issues.
      Meanwhile, Angela was recording one of the officers arresting Thomas, again holding her cell phone within inches of the officer's face.  She was screaming and swearing that the officers were violating her friends' rights.  Parrett intervened to assist the arresting officer and ultimately himself effected Angela's arrest, the details of which we again reserve for our discussion of the issues.
      As these events unfolded, Frederick was standing in the middle of Florence Street yelling, "[F]-you"; that he was not leaving; and that "we're not leaving."  Vaughn repeatedly told Frederick that he had to leave.  When Frederick refused to comply, Vaughn told him that he was under arrest.  Frederick thereafter strenuously resisted three officers' efforts to handcuff him, and an officer ultimately shocked him with a Taser to obtain his compliance and take him into custody.  
      2.  Defense at trial.  The three juveniles testified in their own defense.  In essence, they each contended that the officers used excessive force and that any conduct alleged to amount to resisting arrest was instead in self-defense.  
      In brief, Frederick denied that he stuck his head in the window of Parrett's cruiser and testified that, like Angela, he used his cell phone to record the arrests of Manolo and Thomas and was just trying to make sure they "were okay" when he later said, "I'm not leaving."  He testified that police abruptly slammed him to the ground before he, surprised and scared, in self-defense physically struggled against them as they attempted to handcuff him.  
      Angela testified that Parrett slapped her cell phone out of her hand "[t]he minute" she first started recording, and that Parrett persisted in slapping it from her hand four or five times.  She testified that her arrest took place after she had obeyed an officer's request that she step back ten or fifteen feet, from which location she still was recording but was not "in [the officers'] face."  Parrett, having pointed at her and told her she was going to be arrested, "grabbed" the hand she was using to record; she "told him, just let me put my phone in my pocket real quick"; and he then "grabbed [her] by [her] ponytail and threw" her to the ground, turned her on her stomach, took hold of one of her arms, sat on top of her, and then sprayed her with pepper spray in her face.  She described requesting and receiving medical attention afterward due to the effects of the pepper spray and presented photographs of injuries to her chin, leg, and elbow.  
      Manolo testified that, while he was trying to see whether Thomas "was okay" because an officer was "beat[ing]" him, Vaughn pushed Manolo so hard that he fell to the ground.  As Manolo stood up and sought to regain his balance, Vaughn pushed him again, and he and the officer fell to the ground.  He recalled "multiple officers trying to arrest" him, his "face . . . being pushed to the ground," pain from "a knee in [his] back," and telling the officers he "couldn't breathe."  The officers then handcuffed him behind his back.  He presented photographs of injuries to his head and arms and testified that, two or three days after the arrest, he went to the hospital to seek medical attention for pain in his head, arms, and lower back.  
      The juveniles further testified that the crowd on Florence Street was far smaller than described by some of the officers, and they adduced testimony from one officer that there were fewer than ten people in the immediate vicinity of the key events.  They also introduced a one-minute video recording showing part of the events, which they contended corroborated their testimony. 
      3.  Prior proceedings.  As relevant here, on October 4, 2019, the three juveniles each were charged with resisting arrest in violation of G. L. c. 268, § 32B, and Manolo was charged with assault and battery on a police officer in violation of G. L. c. 265, § 13D.[3]  Frederick moved to dismiss the resisting arrest charge, and the judge denied the motion.  
      Following a two-day jury trial, the three juveniles were adjudicated delinquent on the charges, and each was sentenced to three months of administrative probation.  They appealed.  The Appeals Court affirmed the adjudications for resisting arrest but vacated Manolo's adjudication for assault and battery of a police officer because of an error in the jury instructions for that offense.  Commonwealth v. Manolo M., 103 Mass. App. Ct. 614, 615 (2023).  We granted the juveniles' applications for further appellate review, limited to the issues related to the adjudications for resisting arrest. 
      Discussion.  We are called on in this case to construe Massachusetts' statute criminalizing resisting arrest, G. L. c. 268, § 32B.  The statute, first enacted in 1995, see St. 1995, c. 276, provides in relevant part:
"(a) A person commits the crime of resisting arrest if he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor or another, by:
"(1) using or threatening to use physical force or violence against the police officer or another; or
"(2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another.
"(b) It shall not be a defense to a prosecution under this section that the police officer was attempting to make an arrest which was unlawful, if he was acting under color of his official authority, and in attempting to make the arrest he was not resorting to unreasonable or excessive force giving rise to the right of self-defense.  A police officer acts under the color of his official authority when, in the regular course of assigned duties, he is called upon to make, and does make, a judgment in good faith based upon surrounding facts and circumstances that an arrest should be made by him."
G. L. c. 268, § 32B (a)-(b).  This offense thus requires proof that (1) the defendant prevented or attempted to prevent a police officer from making an arrest; (2) the defendant did so by using or threatening to use physical force or violence against the officer or another or by using any other means that create a substantial risk of causing bodily injury to the officer or another; (3) the defendant did so knowingly; and (4) the officer was acting under color of official authority in the sense that the officer was called on to make, and did make, a judgment to arrest in good faith, based on the surrounding facts and circumstances.  See id.  It is not a defense to prosecution for resisting arrest that the arrest was "unlawful," so long as the officer was acting "under color of . . . official authority" as defined by the statute and "was not resorting to unreasonable or excessive force giving rise to the right of self-defense."  G. L. c. 268, § 32B (b). 
      We first address Frederick's and Angela's arguments with respect to the element that the arresting officer be acting under color of official authority.  We then turn to Angela's and Manolo's arguments with regard to the prohibited means of resisting arrest. 
      1.  Color of official authority.  Before delving into the details of each juvenile's argument, we first consider how the requirement that the Commonwealth prove the arresting officer was acting under color of official authority in the sense that the officer made "a judgment in good faith" to arrest, G. L. c. 268, § 32B (b), relates to the question whether the officer had probable cause to make the arrest.  As ever, "[o]ur primary goal in interpreting a statute is to effectuate the intent of the Legislature."  Commonwealth v. Rainey, 491 Mass. 632, 641 (2023), quoting Conservation Comm'n of Norton v. Pesa, 488 Mass. 325, 331 (2021).  We begin with the statute's plain language, as it is "the best indication of the Legislature's ultimate intent."  Commonwealth v. Hyde, 434 Mass. 594, 600 (2001).  We endeavor to ascertain that intent from "all [the statute's] words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished" (emphasis and citation omitted).  Rainey, supra.  Where a statutory term is undefined, we look to the term's "use in other legal contexts," as well as dictionary definitions, to ascertain its ordinary meaning.  Wallace W. v. Commonwealth, 482 Mass. 789, 796 (2019).  
      As set forth above, the statute requires the Commonwealth to prove in a prosecution for resisting arrest that the arresting officer was "acting under color of . . . official authority."  G. L. c. 268, § 32B (a).  The statute then defines this phrase to mean that the officer, while "in the regular course of assigned duties," was "called upon to make, and [did] make, a judgment in good faith based upon surrounding facts and circumstances that an arrest should be made."  G. L. c. 268, § 32B (b).  
      The statute does not define "good faith," beyond stating that the judgment should be "based upon surrounding facts and circumstances."  While the concept of good faith is a familiar one across a wide array of our laws, its meaning "varies somewhat with the context."  Black's Law Dictionary 832 (12th ed. 2024), quoting Restatement (Second) of Contracts § 205 comment a (1979).  Massachusetts does not have common-law tradition, to which we might have presumed the Legislature intended to refer, that specifically defines when an officer acts under color of official authority by making a good-faith judgment to arrest; there is no direct precursor to this element -- or, indeed, the offense of resisting arrest as such -- in our common law.[4]  
      For purposes of deciding this case, we need not and do not attempt to anticipate the full variety of circumstances that might bear on whether an officer formed "a judgment in good faith based upon surrounding facts and circumstances that an arrest should be made."  G. L. c. 268, § 32B (b).  Cf. Model Penal Code § 242.2, comment 4 (Official Draft and Revised Comments 1980) (characterizing resisting arrest statutes incorporating good-faith requirements as providing exception for cases where officer "acts from personal bias or clearly without authority").  To address the juveniles' arguments, it suffices to explicate the relationship between this element and a finding of probable cause to arrest.  
      In essence, a judge's after-the-fact objective determination whether an officer had probable cause to arrest a defendant for a particular offense is relevant to, but not necessarily decisive of, whether the officer, acting under color of official authority, made a good-faith decision to arrest the defendant.  The statute provides that the unlawfulness of an arrest is not a defense to prosecution, G. L. c. 268, § 32B (b), thereby strongly implying that a good-faith judgment to arrest may exist in some circumstances even where probable cause does not.  At the same time, however, the requirement of good faith does impose a limit.  See Commonwealth v. Urkiel, 63 Mass. App. Ct. 445, 453 (2005) (describing provision as "compromise" between more extreme alternatives of denying right to resist any illegal arrest or recognizing "a right to resist [proportionately]" all illegal arrests).  As relevant here, that limit is contravened, and the statute requires dismissal of a complaint or allowance of a motion for a required finding of not delinquent at trial, where the circumstances fall so short of establishing probable cause to arrest as to preclude a rational inference that the arresting officer made the judgment to arrest in good faith.
      a.  Motion to dismiss.  We now turn to Frederick's argument that the complaint against him for resisting arrest should have been dismissed for lack of probable cause that the arresting officer made "a judgment in good faith based upon surrounding facts and circumstances that an arrest should be made."  G. L. c. 268, § 32B (b).  Whether there was probable cause to issue a complaint is a question of law that we review de novo.  See Manolo M., 486 Mass. at 691-692.  "To establish probable cause, the complaint application must set forth reasonably trustworthy information sufficient to warrant a reasonable or prudent person in believing that the defendant has committed the offense."  Id. at 692, quoting Commonwealth v. Humberto H., 466 Mass. 562, 565 (2013).  "The complaint application must include information to support probable cause as to each essential element of the offense."  Humberto H., supra at 565-566.  We consider the information recited in the complaint application in the light most favorable to the Commonwealth.  Commonwealth v. Brennan, 481 Mass. 146, 149 (2018).
      Frederick argues that the complaint application failed to establish probable cause because there was no offense for which the officers could form a judgment in good faith to arrest him, and because his conduct recited in the application consisted of criticism of the police that is protected by the First Amendment.  The Commonwealth responds that the facts set forth in the complaint application are sufficient to support a reasonable inference that the arresting officer formed a good-faith judgment to arrest Frederick for an offense such as disorderly conduct in violation of G. L. c. 272, § 53, on the theory of that offense prohibiting "tumultuous behavior" accompanied by the "intent to cause public inconvenience, annoyance or alarm."  Commonwealth v. Sholley, 432 Mass. 721, 728 (2000), cert. denied, 532 U.S. 980 (2001), citing Model Penal Code § 250.2(a).  
      The complaint application recited that officers arrived on Florence Street in response to a report that a large crowd of youths had gathered there and a victim had been assaulted.  The officers found a crowd of over one hundred youths "standing in the street lingering."  The street was "entirely blocked."  At least six marked police cruisers arrived, lights and sirens on, and several officers used their cruisers' public address microphones to advise the crowd to disperse.  As these efforts to disperse the crowd continued, school resource officer Parrett fell to the ground while attempting to arrest Thomas, and the crowd began rushing toward them.  As another officer, Vaughn, attempted to shield Parrett from the encroaching crowd, Manolo tried to run past Vaughn while shouting at Parrett; Vaughn asked and then shouted at Manolo to stay back; Manolo responded, "Mother fucker you wanna go!  Let[']s go!" before attempting to punch Vaughn in the head; Vaughn repelled Manolo with a kick; and the two then fell to the ground, "a large crowd all around" as they struggled until another officer assisted Vaughn in arresting Manolo.
      It was at this point, after both Thomas and Manolo had been arrested, but while the crowd continued to refuse to obey the officers' requests to disperse, that Frederick was "walking slowly in the middle of the street yelling, 'Fuck you pigs I ain[']t moving shit!'"  Vaughn asked Frederick to leave the area several times, but Frederick "continued to yell at" the police, "enticing the crowd to stay and become even more ag[]itated."  Vaughn then advised Frederick that he was under arrest.  
      We agree with the judge that these facts supplied probable cause for the color of official authority element of resisting arrest.  After officers had fallen to the ground in two physical struggles with members of a large crowd that had not dispersed in response to police requests, Frederick was walking in the middle of the street that police were attempting to make passable; he ignored repeated police requests directed at him, in particular, to leave; and he was yelling comments "enticing" the crowd to remain and become more agitated.  In the light most favorable to the Commonwealth, and particularly considering the outbreaks of violence that already had occurred within the crowd that still had yet to disperse at the time of Frederick's conduct, these facts amounted to "reasonably trustworthy information sufficient to warrant a reasonable or prudent person in believing that" the arresting officer formed a good-faith judgment that he should arrest Frederick.  Manolo M., 486 Mass. at 692.  Notwithstanding Frederick's argument that the officer "could not have honestly believed that he had probable cause to arrest" Frederick for any offense, the circumstances bear sufficient similarity to cases in which convictions for tumultuous disorderly conduct have been upheld as to permit a reasonable inference of good faith; the arrest was not clearly lacking in probable cause.  See, e.g., Commonwealth v. Marcavage, 76 Mass. App. Ct. 34, 38-40 (2009), cert. denied, 562 U.S. 891 (2010) (upholding disorderly conduct conviction where, amidst large, noisy, and raucous crowd of people, many of them intoxicated, evangelist repeatedly refused police orders to cease using megaphone, thereby "drew a hostile crowd that was out of control," and caused police to be "concerned for their own safety").  
      The First Amendment does not require a contrary conclusion.  We agree with Frederick that the constraints imposed on government action by the First Amendment may bear on whether an arresting officer was "called upon to make, and [did] make, a judgment in good faith based upon surrounding facts and circumstances that an arrest should be made."  G. L. c. 268, § 32B (b).  "The freedom . . . [to] challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."  Houston v. Hill, 482 U.S. 451, 462-463 (1987).  We long have recognized that the First Amendment limits the reach of the disorderly conduct statute in particular and have construed the statute to "reach only conduct that involved 'no lawful exercise of a First Amendment right.'"  Commonwealth v. Chou, 433 Mass. 229, 235-236 (2001), quoting Commonwealth v. A Juvenile, 368 Mass. 580, 599 (1975).  But the fact that conduct is "accompanied by speech" does not preclude conviction where the defendant's conduct otherwise amounts to tumultuous behavior rising to the level of disorderly conduct.  Commonwealth v. Richards, 369 Mass. 443, 448-450 (1976).  See, e.g., Sholley, 432 Mass. at 727-731 (rejecting First Amendment defense where defendant claimed his disorderly conduct "was part of his political protest against the unfair prosecution of husbands and fathers").  The relevant question with respect to the color of official authority element of resisting arrest is whether, accounting for these well-established constitutional principles together with all the circumstances, the alleged facts "warrant a reasonable or prudent person in believing that" the officer formed a good-faith judgment to arrest.  Humberto H., 466 Mass. at 565.  
      Here, the fact that Frederick's conduct was accompanied by criticism of the police does not preclude a reasonable inference from the complaint application, "viewed in its totality," that the officer formed a good-faith judgment to arrest Frederick based on his conduct, not his constitutionally protected speech, for an offense such as disorderly conduct.  Humberto H., 466 Mass. at 569.  See Marcavage, 76 Mass. App. Ct. at 40 (upholding disorderly conduct conviction where, although defendant's "dissemination of his religious message . . . may have enjoyed First Amendment protection, that protection did not entitle him to disregard police commands reasonably calculated at ensuring public safety amid potentially dangerous circumstances").  Drawing from the recited facts the inference that the officer arrested Frederick merely for engaging in constitutionally protected criticism of the police would be at odds with the requirement that, on review of a motion to dismiss a criminal complaint, we view the facts in the light most favorable to the Commonwealth.  See Brennan, 481 Mass. at 149.  Frederick's motion to dismiss therefore was properly denied.  
      b.  Motions for required findings.  We next turn to Frederick's and Angela's respective motions at trial for required findings of not delinquent on the ground that the Commonwealth failed to prove that the arresting officers were acting under color of their official authority.  On review of the denial of a motion for a required finding, we determine whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Commonwealth v. Combs, 480 Mass. 55, 61 (2018), quoting Latimore, 378 Mass. at 676-677.  "Proof of an essential element of a crime may be based on reasonable inferences drawn from the evidence, but it may not be based on conjecture."  Combs, supra at 61-62.  Rather, "the evidence and the inferences permitted to be drawn therefrom must be 'of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [delinquency] beyond a reasonable doubt.'"  Latimore, supra at 677, quoting Commonwealth v. Cooper, 264 Mass. 368, 373 (1928).  Where, as Frederick and Angela do here, a defendant claims that the defense case deteriorated the Commonwealth's case, the question is not whether "the defendant contradicted the Commonwealth's evidence" but instead whether the "evidence for the Commonwealth necessary to warrant submission of the case to the jury" was "shown to be incredible or conclusively incorrect."  Commonwealth v. O'Laughlin, 446 Mass. 188, 203 (2006), quoting Kater v. Commonwealth, 421 Mass. 17, 20 (1995).
      The evidence presented by the Commonwealth relevant to Frederick's arrest accorded with the facts recited in the complaint application.  The testimony was sufficient for the jury to find that the scene on Florence Street was loud and chaotic.  A large crowd was blocking the street and not heeding police officers' requests to disperse.  Officers had fallen to the ground in struggles with Thomas and then Manolo, as described above.  After Manolo had been arrested, a large crowd remained, which the police were still trying to disperse; they asked Frederick, who was still in the street, to leave; and Frederick then, in Vaughn's words, "became volatile as well."  Frederick said "f-you" to Vaughn and was "enticing the group, yelling that he's not leaving, we're not leaving."  At this point, after asking Frederick several times to leave to no avail, Vaughn told him he was under arrest.  Although, as Frederick emphasizes, Vaughn did not testify that Frederick's yelling caused the crowd to form, a jury reasonably could infer from the evidence that Vaughn perceived Frederick's conduct -- in loudly refusing to obey police orders to depart the street -- as prolonging the blocking of the street and thereby risking further physical confrontations between police and members of the crowd.  
      For similar reasons as on the motion to dismiss, the judge properly denied Frederick's motion for a required finding at the close of the Commonwealth's evidence.  A rational fact finder could conclude from this evidence beyond a reasonable doubt that Vaughn made a good-faith judgment to arrest Frederick.  Although, as Frederick argues, his conduct prior to his arrest did not involve aspects present in some disorderly conduct cases -- such as itself attracting a crowd of onlookers or physically threatening or fighting with police officers, see, e.g., Commonwealth v. Sinai, 47 Mass. App. Ct. 544, 548-549 (1999) -- the evidence at trial provided the basis for at least a good-faith judgment to arrest him for tumultuous disorderly conduct.  See, e.g., Marcavage, 76 Mass. App. Ct. at 36-38.  And Frederick's First Amendment argument again is unavailing.  While he contends that Vaughn could not arrest him in good faith for shouting profane criticisms at police officers or openly recording them with a cell phone in public,[5] the evidence of his conduct was not limited to these activities.[6]  Viewed in the light most favorable to the Commonwealth, the evidence at trial was sufficient to prove the color of official authority element.
      Finally, the defense evidence did not so deteriorate the Commonwealth's case against Frederick as to warrant a required finding at the close of all the evidence.  Frederick relies on the video recording of a portion of the events introduced by the juveniles to argue that he merely was recording the arrests of Thomas and Manolo from a safe distance, and that "there were few juveniles in the immediate vicinity"; the recording indeed does not show a dense crowd.  Frederick claims that the recording thus demonstrates to be incorrect officers' testimony that there was a loud and chaotic crowd of over one hundred people refusing to leave the area, and also thus precludes a reasonable inference that Vaughn made a good-faith judgment to arrest him.  But the one-minute recording, centered on the front yard of one residence together with a portion of the adjacent street, does not pan fully up and down the street to reveal how many other people are in the street and thus, as the Appeals Court determined, is too "limited in both time and perspective" to amount to conclusive proof on this score.  Manolo M., 103 Mass. App. Ct. at 622-623.[7]  See O'Laughlin, 446 Mass. at 203.  Rather, the recording "raised issues of credibility and weight which were appropriately submitted to the jury."  Commonwealth v. Pike, 430 Mass. 317, 324 (1999).  
      Similarly to Frederick, Angela argues that the evidence did not supply a basis from which a reasonable jury could conclude beyond a reasonable doubt that the officer who arrested her formed a good-faith judgment to arrest, because she was not committing any crime.  Rather, she contends, her conduct in recording the police officers with her cell phone was a lawful attempt to hold them accountable and "to memorialize police aggression against her Black friends."[8]
      The judge properly concluded that the evidence on this element was sufficient to submit to the jury.  Parrett testified that Angela was holding her cell phone camera five to eight inches from his face and yelling at him as he was attempting to speak with Frederick.  Parrett at this point told her to "get the camera out of my face."  As Angela persisted in her conduct, Parrett knocked the cell phone from her hands three times.  Later, Parrett observed Angela, still recording with her cell phone, approach other officers as they were attempting to take Thomas into custody.  Angela was "all over them," within approximately five inches of the officers' faces, as she asked them why they were "violating [Thomas's] rights" and "harassing him."  One of the officers who effected Thomas's arrest similarly testified that Angela was "constantly in all the officer's faces with her phone, swearing at us, asking us how the F we're violating all of their rights," and, as he was assisting with Thomas's arrest, she was "in [his] face with a camera, screaming at me, swearing at me."  Viewing this evidence in the light most favorable to the Commonwealth, a rational fact finder could conclude beyond a reasonable doubt that, when Parrett arrested Angela, he was acting under color of his official authority in the statutorily defined sense that he made a good-faith judgment to arrest.
      We thus disagree with Angela's argument that these circumstances fall so short of providing probable cause to arrest her for any offense as to preclude a good-faith judgment to arrest.  Viewed in the light most favorable to the Commonwealth, the evidence suffices to support an inference that the officer formed a good-faith judgment to arrest Angela for an offense such as interfering with a police officer.  See Commonwealth v. Adams, 482 Mass. 514, 530 (2019) (interfering with police officer requires proof that "officer was engaged in the lawful performance of a duty"; "defendant physically performed an act that obstructed or hindered [the] officer in the lawful performance of that duty"; defendant was "aware that the police officer was engaged in the performance of his or her duties"; and defendant "intended to obstruct or hinder the officer in the performance of that duty").  While, as Angela emphasizes, the officers did not explain how her physical act of thrusting her cell phone inches from their faces obstructed or hindered their ability to perform their duties, no such testimony was required; based on the evidence presented, a fact finder reasonably could infer that Parrett formed a good-faith judgment that Angela's conduct did hinder officers as they sought to effect Thomas's arrest.
      Angela's argument that the video recording deteriorated the Commonwealth's case because it does not show her thrusting her cell phone within inches of the officers' faces is unavailing for similar reasons as Frederick's arguments based on the recording.  Although the recording does not show Angela within inches of the officers, again, the recording captures only a portion of the events.  The recording shows only the final time Parrett knocked Angela's cell phone from her hands and then ends before the arrests of Manolo and Thomas and Angela's attendant conduct.  The jury therefore were entitled to weigh the witnesses' conflicting testimony.  See Pike, 430 Mass. at 324.
      Finally, again like Frederick, Angela contends that the First Amendment protected her conduct, because she was recording police in public performing their duties from a safe distance.  See Glik v. Cunniffe, 655 F.3d 78, 82-85 (1st Cir. 2011).  As already described, however, there was ample evidence before the jury that some of Angela's recording did not occur from a safe distance.  Accordingly, viewing the evidence in the light most favorable to the Commonwealth, a jury reasonably could find that Parrett was acting under his official authority in the sense that he formed a good-faith judgment to arrest Angela. 
      We thus conclude that the judge correctly denied both Frederick's and Angela's motions for required findings with respect to the color of official authority element of resisting arrest.
      2.  Means of resistance.  We next turn to Angela's and Manolo's respective arguments that their motions for required findings should have been granted because there was insufficient evidence that they engaged in the means of resisting arrest prohibited in G. L. c. 268, § 32B (a).
      The statute prohibits two means of resisting arrest:  "(1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another."  G. L. c. 268, § 32B (a) (1)‑(2).  We begin by clarifying the relationship between the two prongs.  
      Manolo contends that the physical force or violence prohibited in the first prong also must create a substantial risk of injuring an officer.  In effect, he argues that the word "other" in the phrase "other means which create a substantial risk of causing bodily injury" equates the conduct prohibited in the physical force or violence prong with "means which create a substantial risk of causing bodily injury."  
      This argument was correctly rejected more than two decades ago by the Appeals Court:  "There is no requirement under § 32B(a)(1) that the Commonwealth show a substantial risk of causing bodily injury to the police officer or another."  Commonwealth v. Katykhin, 59 Mass. App. Ct. 261, 263 (2003).  The defendant's interpretation is untenable because, among other reasons, the physical force or violence prong prohibits not only actually using force or violence, but also "threatening" to do so, G. L. c. 268, § 32B (a) (1), and such a threat does not alone "create[] a substantial risk of causing bodily injury" to an officer, G. L. c. 268, § 32B (a) (2).  The two subsections thus prohibit distinct means of resisting arrest:  (1) using or threatening to use physical force or violence, or (2) other means that create a substantial risk of causing bodily injury to an officer.
      Accordingly, we have rejected as irreconcilable with the statute the "view that the crime of resisting arrest is 'self-explanatory,' or that the word 'resist' has a 'commonly understood' meaning that makes the definition of 'resisting arrest' obvious," and we have held that an assertion that a defendant was "resist[ing]" is not, without more, sufficient evidence of a violation (citation omitted).  Hart, 467 Mass. at 328.  Rather, whether a defendant resisted arrest through either or both of the two means prohibited by the statute "is an intensely factual, nuanced inquiry that must consider the nature of the defendant's conduct or actions and the sequence of those actions in relation to corresponding action by the police officers involved."  Id.  
      We have held, for example, that evidence sufficed to prove a use of physical force against an officer where a defendant, having "charged at" an officer "with his hands clutched in fists," then "ran right into" a second officer when the first stepped aside; "knocked" the second officer's hand; and "hit his flashlight out of his hand."  Commonwealth v. Powell, 459 Mass. 572, 576, 581-582 (2011), cert. denied, 565 U.S. 1262 (2012).  And, applying the substantial risk prong, we held in Commonwealth v. Montoya, 457 Mass. 102, 105-106 (2010), that a defendant created a substantial risk of causing bodily injury to officers when, late at night and in a poorly lit area, he jumped over a fence at the precipice of a canal, and the water in the canal was "deep enough that the defendant had to tread water until his rescue."  In so holding, we noted that our interpretation aligned with the Model Penal Code, which has a similar substantial risk of bodily injury provision intended to apply if a defendant's manner of flight from arrest "expose[s] the pursuing officers to substantial danger."  Id. at 105, quoting Model Penal Code § 242.2 comment 2, at 214.[9] 
      We pause to discuss another decision in which we upheld a conviction under the substantial risk prong, Commonwealth v. Grandison, 433 Mass. 135, 144-145 (2001), because the parties debate its application here.  There, as an officer "tried to handcuff" a defendant who was "shouting obscenities," the defendant "stiffened his arms and, for a second, was able to pull one of his arms free."  Id. at 143.  Three additional officers "aided" the initial officer "in getting the defendant's arms behind his back so that he could be handcuffed"; the defendant "never complied with a request to put his hands behind his back" and instead was "struggling."  Id. at 143-144.  All told, "[t]he scuffle with the four officers took somewhere between thirty seconds to one minute."  Id. at 144 n.15.  Although we ultimately vacated the defendant's conviction on other grounds, see id. at 145-147, we held that a rational jury could have concluded beyond a reasonable doubt that he "used 'any other means' that created a 'substantial risk of causing bodily injury' to the police officers":  "the defendant would not bend his arms to allow the handcuffs to be placed on him and he managed to pull his arm away for a few seconds"; "[i]t took four police officers to handcuff him" amidst his struggling; and "[t]he type of resistance the defendant perpetrated could have caused one of the officers to be struck or otherwise injured, especially at the moment he freed his arm."  Id. at 144-145, quoting G. L. c. 268, § 32B (a) (2).  The extent of the physical struggle thus was central to our conclusion that the evidence was sufficient.[10]
      At the juveniles' trial, the jury were instructed on both prohibited means of resisting arrest.  We discuss the statute's application to the conduct of Angela and Manolo in turn.
      In defending Angela's adjudication of resisting arrest, the Commonwealth relies on the physical force or violence prong of the statute, G. L. c. 268, § 32B (a) (1).  The evidence at trial showed that, at the time Parrett sought to arrest Angela, she was "all over" the officers attempting to arrest Thomas, holding her camera within inches of one officer's face and screaming at them.  When Parrett first attempted to put Angela's hands behind her back, she, in his words, "resisted" and "was pulling away from" him:  "I tried to grab one arm.  She yanked away with the camera still going.  I tried to put her hands behind her back, she wouldn't."  He then took hold of her by her hair and the backpack she was wearing and "put her on the ground."  Once on the ground, Angela was on her stomach and "pulled her hand under her body"; her hands thus "tucked under" her body, she "refus[ed] to put them behind her back."  After repeatedly requesting that she pull her hands out, Parrett sat on her "tail bone area" in order "to free [him]self up to grab [his] pepper spray."  He then sprayed her with the pepper spray, at which point she removed her hands from underneath her body and put them behind her back.  
      We conclude that this evidence, viewed in the light most favorable to the Commonwealth, was sufficient to prove that Angela used physical force against Parrett to resist arrest.  As Angela argues, the phrase "pulling away" in some circumstances describes a mere act of moving away, without use of physical force.[11]  Cf. Commonwealth v. Tyson, 104 Mass. App. Ct. 739, 747 (2024) (analyzing defendant's attempt to "pull away" during arrest as "attempt to move away during arrest").  Here, however, there was additional evidence from which the jury reasonably could infer that Angela's conduct consisted of using physical force against Parrett.  Parrett described Angela as having "yanked away with the camera still going," a description from which the jury could infer that Angela used physical force against Parrett to free her arm as she held her cell phone in her hand.[12]  While Angela emphasizes the degree of force used by Parrett in arresting her, suggesting that it was excessive particularly given her age and size relative to the officers, this was a question for the jury; they were instructed on self-defense and evidently rejected the defense.  The judge properly denied Angela's motions for required findings.[13] 
      Finally, we address Manolo's argument that his motion for a required finding should have been granted on this element.  As described above, Manolo's arrest occurred after a course of events in which Manolo repeatedly approached Vaughn despite Vaughn's instructions to stay back; Vaughn eventually pushed Manolo to keep him back; Manolo challenged Vaughn to fight and attempted to punch him in the head; Vaughn kicked at Manolo to force him back; and, after Manolo again approached and Vaughn again told him to get back, the two fell to the ground.  While they were on the ground, Vaughn was "telling [Manolo] he was under arrest" and "was trying to place him under arrest."  Meanwhile, another officer had "observed" Vaughn "having an altercation" in which he was "trying to get [Manolo] to comply" with commands to "place his hands behind his back."  This second officer then, in his words, "ran over" and assisted Vaughn by "grabbing [Manolo's] arm and putting the hand behind his back so Officer Vaughn could apply handcuffs."  
      Our precedent forecloses the Commonwealth's initial argument that Manolo's motion for a required finding properly was denied because he "swung at the officer requiring him to block the blow."  The offense of resisting arrest must happen "at the time of the 'effecting' of an arrest."  Grandison, 433 Mass. at 145, quoting G. L. c. 268, § 32B.  While "effecting arrest may be a 'process'" (citation omitted), Hart, 467 Mass. at 327 n.9, it occurs where there is (1) "an actual or constructive seizure or detention of the person," (2) "performed with the intention to effect an arrest" and (3) "so understood by the person detained" (citation omitted), Grandison, supra.  Accordingly, "conduct of the defendant that formed part of the basis for his subsequent arrest . . . and took place before there was any actual or constructive seizure of him does not and cannot amount to resistance to that arrest."  Hart, supra.  Here, the record does not disclose any basis for concluding that Manolo understood that he was under arrest prior to the time Vaughn told him he was under arrest as they were on the ground.  Manolo's preceding conduct -- for which he was charged with assault and battery on a police officer -- cannot constitute, in addition, the offense of resisting arrest.  See id.
      The sufficiency of the evidence of Manolo's conduct once Vaughn began effecting his arrest presents a close question.  As Manolo argues, the record does not include testimony expressly describing a specific use of physical force by Manolo against Vaughn once they were on the ground.  Relying instead on circumstantial evidence, the Commonwealth argues that "the very fact that Officer Vaughn needed assistance to arrest [Manolo] provided sufficient evidence for the jury to make the reasonable inference that [Manolo] was physically struggling while on the ground with multiple officers," and that, "[i]n physically struggling with the officers, [Manolo] was not cooperative with placing his hands behind his back and was therefore, resisting arrest."  We understand these arguments to relate primarily to the physical force or violence prong under G. L. c. 268, § 32B (a) (1).[14] 
      While we do not agree with all the premises of the Commonwealth's arguments, we conclude that the evidence was sufficient for a jury to conclude beyond a reasonable doubt that Manolo used physical force against Vaughn.  The jury were not required to ignore how and why Manolo and Vaughn ended up on the ground in drawing reasonable inferences from the evidence of what then occurred.  The preceding course of conduct by Manolo included physically aggressive acts in response to Vaughn's repeated requests that Manolo stay back:  charging at Vaughn, challenging him to fight, and then attempting to punch him in the head.  In light of this conduct by Manolo immediately leading up to his arrest, the jury reasonably could infer from the testimony describing the arrest -- that Vaughn was "having an altercation" with Manolo on the ground in which Vaughn was "trying to get [Manolo] to comply" with commands to "place his hands behind his back," prompting a second officer to "run" to assist by "grabbing [Manolo's] arm" -- that Manolo was using physical force against Vaughn to resist Vaughn's efforts to handcuff him.  
      While thus concluding that the evidence presented here was sufficient, we reject the Commonwealth's suggestion that the fact that a second officer came to the arresting officer's assistance alone creates a reasonable inference that the defendant used physical force against the officer.  Innumerable circumstances may prompt a second officer to assist a colleague, even where a defendant does not engage in the means of resisting arrest prohibited by G. L. c. 268, § 32B (a).[15]  Nor, similarly, is it alone sufficient that a defendant was "not cooperative" during an arrest.  Rather, the Commonwealth must introduce evidence sufficient to prove that the defendant engaged in the particular means of resisting arrest prohibited by the statute.  See Hart, 467 Mass. at 328.  Here, however, additional evidence sufficed to prove that Manolo used physical force to resist arrest.
      Conclusion.  The judge properly denied Frederick's motion to dismiss the complaint against him for resisting arrest and at trial properly denied all three juveniles' motions for required findings of not delinquent on this offense.  We therefore affirm the adjudications of delinquency for resisting arrest and, in Manolo's case, remand for further proceedings on the adjudication for assault and battery on a police officer that was vacated by the Appeals Court in Manolo M., 103 Mass. App. Ct. at 615.
                                          
 
So ordered.
footnotes

          [1] Commonwealth vs. Frederick F., a juvenile; and Commonwealth vs. Angela A., a juvenile.  For these juveniles as well as an additional juvenile involved in the events (Thomas), we adopt the same pseudonyms used in the previous opinions in this case.  See Commonwealth v. Manolo M., 486 Mass. 678, 678, 680 n.5 (2021); Commonwealth v. Manolo M., 103 Mass. App. Ct. 614, 627 n.1 (2023).
          [2] We acknowledge the amicus brief submitted by the Criminal Justice Institute at Harvard Law School, the New England Innocence Project, and the Massachusetts Association of Criminal Defense Lawyers, and the amicus brief submitted by the youth advocacy division of the Committee for Public Counsel Services and Citizens for Juvenile Justice.
          [3] The three juveniles each also were charged with disturbing the peace, disorderly conduct, and inciting a riot, and Frederick and Manolo were charged with interfering with a police officer.  On interlocutory review, this court affirmed the dismissal of the charges of inciting a riot and held that the juveniles' minor misdemeanor charges of disturbing the peace, disorderly conduct, and interfering with a police officer were required to be dismissed under G. L. c. 119, § 52, because this incident was each juvenile's "first episode of minor misdemeanor level misconduct."  Manolo M., 486 Mass. at 690-694. 
          [4] For much of the Commonwealth's history, the concept of "resisting" arrest pertained to a defense:  a person faced with an unlawful arrest enjoyed a right to resist the arrest with proportionate force, without liability for crimes such as assault and battery on a police officer.  See Commonwealth v. Moreira, 388 Mass. 596, 598 (1983).  See also Proposed Criminal Code of Massachusetts, c. 268, § 10, Revision Commission Note (1972), and cases cited (noting apparent lack of "any Massachusetts statute punishing a person who resists an arrest" and that common law of assault required that arrest "be lawful in order for there to be any crime in resisting it").  The right to resist an unlawful arrest persisted until 1983, when this court, having concluded that "self-help by an arrestee" had become "anachronistic" due to modern advancements in the rights of criminal defendants, held that, so long as the arresting officer does not use excessive force giving rise to a right of self-defense, a person "may be reasonably required to submit to a possibly unlawful arrest and to take recourse in the legal processes available to restore his liberty."  Moreira, supra at 600.
          [5] Although it appears that the Commonwealth's case did not include direct evidence that Frederick himself was recording police officers with his cell phone, there was testimony that numerous people at the scene were recording with their cell phones.  Frederick later testified in his own defense that he was recording the police with his cell phone.   
               [6] We note that Frederick could have, but did not, request a jury instruction that a police officer cannot lawfully arrest a person solely for shouting profane criticism at a police officer or for openly recording from a safe distance as police officers perform their duties in public.  See Glik v. Cunniffe, 655 F.3d 78, 82-85 (1st Cir. 2011).  Cf. Sinai, 47 Mass. App. Ct. at 546 (jury instructed on disorderly conduct charge that "you cannot convict on speech alone," "[n]o matter how coarse, how offensive, or how abusive that speech may be"). 
          [7] Frederick further argues that the recording's representation of the crowd size is corroborated by testimony from one officer that there were fewer than ten people around Vaughn at the time of the arrests.  But this same officer also testified that there were "well over" one hundred students gathered on the street.  
               [8] The briefs of both Frederick and Angela frame their statutory and constitutional arguments with citations to published research on, among other subjects, the origins of the offense of resisting arrest, racial disparities in the rates at which arrestees are charged with the offense, and Black Americans' use of cell phones to record and thereby bring to light police misconduct.  Because these citations to secondary authorities are not improper, we deny the Commonwealth's motions to strike these portions of the briefs as factual material not before the jury.
          [9] As the Model Penal Code notes with respect to its own resisting arrest provision, this requirement -- that, to be liable for resisting arrest under G. L. c. 268, § 32B (a), a defendant who does not use or threaten to use physical force or violence against an officer must create a substantial risk of bodily injury -- guards against the risks that could follow from "authorizing criminal sanctions for any effort to avoid arrest":  "Minor acts of evasion and resistance are sufficiently ambiguous to give rise to honest error, sufficiently elusive to encourage false allegations, and sufficiently commonplace to afford general opportunity for discriminatory enforcement."  Model Penal Code § 242.2 comment 2, at 214.
          [10] We therefore agree with Angela that Grandison does not stand for the proposition that, under the second prong, resisting arrest can "be accomplished by merely stiffening one's arm to avoid being handcuffed."  United States v. Faust, 853 F.3d 39, 53 (1st Cir. 2017), citing Grandison, 433 Mass. at 144-145 (addressing whether conviction of resisting arrest under Massachusetts law qualifies as "violent felony" under Federal Armed Career Criminal Act, 18 U.S.C. § 924[e][2][B]). 
          [11] While many definitions of the word "pull" refer to exerting force, see, e.g., American Heritage Dictionary of the English Language 1058 (4th ed. 1975) ("[t]o apply force to so as to cause or tend to cause motion toward the source of the force"), the word in some contexts means simply "[t]o move," see id. ("[t]he bus pulled away from the curb").
                  [12] Less ambiguous with respect to a use of force than "pull," "yank" means "[t]o pull on something suddenly; to jerk."  American Heritage Dictionary of the English Language 1482.
               [13] Thus concluding that the evidence was sufficient on the physical force or violence prong, we do not consider whether the evidence was sufficient under the substantial risk prong.  Nor need we consider Angela's conduct once she had been "put . . . on the ground."
          [14] The Commonwealth's arguments regarding Manolo's conduct do not distinguish between the prongs of the statute.  While the Commonwealth cites Grandison, 433 Mass. at 135, a case decided under the substantial risk prong, the Commonwealth does not make an argument as to how Manolo's conduct created a substantial risk of causing bodily injury.  See Montoya, 457 Mass. at 105, quoting G. L. c. 268, § 32B (a) (2) (while substantial risk prong does not require that officer be "actively subject to the risk" created by defendant, statute's "plain language" requires proof of conduct that "creates a substantial risk" of bodily injury).  Deciding this case as we do, we need not consider whether the evidence was sufficient under the substantial risk prong.  
                [15] While we cited the involvement of four officers in the arrest in Grandison, 433 Mass. at 145, that arrest, as we have described, involved a prolonged physical struggle with the four officers, see id. at 144 n.15.